IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CAMERON WILLIAMS, | |
| Plaintiff, | **4:22CV3071** |
| vs. | |
| SCOTT FRAKES, et al., | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the Court on Defendants', Scott Frakes, in his official and individual capacities, Brad Hansen, in his individual capacity, Scott Busboom, in his individual capacity, Matilda Serna, in her individual capacity, Athena Sherman, in her individual capacity, Susan Tallant, in her individual capacity, Nicholas Neujahr, in his individual capacity, Justin Houseman, in his individual capacity, Michelle Capps, in her individual capacity, Todd Haussler, in his individual capacity, Chelsea De La Cruz, in her individual capacity, Diane Sabatka-Rine, in her individual capacity, and Christopher Connelly, in his individual capacity, (collectively, "Defendants") motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 and Neb. Civ. R. 56.1. Filing No. 194.

Plaintiff Cameron Williams brought this action for damages and declaratory and injunctive relief for alleged violations of his Constitutional rights to be free from cruel and unusual punishment and in violation of his due process and equal protection rights under 42 U.S.C. § 1983. Filing No. 82, Amended Complaint. Williams has included five Section 1983 claims against Defendants: failure to protect, denial of health care, isolation, violation of his right to due process, and an equal protection claim.

The Court has jurisdiction over Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Filing No. 82. The Court also has authority under 42 U.S.C. § 1988 to award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs. *Id.* For the reasons stated herein, the Court denies Defendants' motion partial summary judgment.

## BACKGROUND

Plaintiff is currently incarcerated at the Reception and Treatment center ("RTC"), but the events leading to this dispute occurred at Tecumseh State Correctional Institute ("TSCI") and the Nebraska State Penitentiary ("NSP"). Filing No. 82 at 2. While imprisoned at TSCI, Plaintiff was incarcerated with his brother's murderer, Jonathan Armendariz. *Id.* at 4–5. This situation posed a safety concern for Plaintiff, and the Nebraska Department of Correctional Services ("NDCS") was aware of the need to keep Plaintiff and Armendariz at separate facilities. *Id.* at 5.

Plaintiff asserts that the defendants disregarded the risks to his safety and housed him in the same facility as Armendariz. Filing No. 82 at 6. Plaintiff filed a precautionary grievance with TSCI, requesting that he stay separate for Armendariz for his safety. Filing No. 212-1 at 4. TSCI informed Plaintiff that he would continue to be housed in the same institution as Armendariz but would ensure the necessary separation if there was a change in housing status for either of the inmates. Filing No. 212–1 at 5. Plaintiff's mother also advocated for the separation of the two inmates, and TSCI assured her that the two inmates would live separately and would update her on any housing changes of the two inmates. Filing No. 82 at 7. Plaintiff preemptively attacked Armendariz to ensure that they would be housed separately. *Id.* at 11.

Plaintiff was later transferred to NSP, where he was asked if he had any "known enemies," and he responded that he did not. Filing No. 198 at 5, ¶ 29. However, Plaintiff later discovered that Armendariz was moved to the same housing arrangement in NSP. Filing No. 82 at 12. Armendariz and other inmates associated with Armendariz, attacked Plaintiff, causing life-threatening injuries. *Id.* at 15–16.

Plaintiff asserts that Defendants violated his Constitutional rights by failing to protect him, denying him health care, unfairly isolating him, depriving him of due process, and denying him equal protection under the law. Filing No. 82 at 18–22. Defendants argue that Plaintiff did not exhaust all remedies available to him while incarcerated at NSP nor notify NSP of his "known enemies." Filing No. 198 at 5. Based on the Defendants' assertion that Plaintiff did not exhaust all administrative remedies by filing a grievance at NSP, Defendants have filed this motion for partial summary judgment. Filing No. 194.

## LAW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence**,**" summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

## DISCUSSION

The only issue before the Court revolves around the defendants' argument that Plaintiff failed to exhaust his administrative remedies.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Congress enacted this mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation." *Kellogg v. Nebraska Dep't of Corr. Servs.*, 690 N.W.2d 574, 580 (Neb. 2005) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998)).

"[U]nexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  *See also, Ross v. Blake*, 578 U.S. 632, 639 (2016) (holding that the exhaustion requirement "suggests no limits on an inmate's obligation to exhaust irrespective of any 'special circumstances'" and the "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account.").

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.  NDCS adopted and promulgated 68 Neb. Admin. Code, ch. 2, which governs inmate grievance procedures.  NCDS has written grievance procedures. These resources are made known to inmates during orientation and are readily available and accessible to them through the Inmate Resource Centers located in each NDCS facility.  Filing No. 196-1 at 2, ¶ 4; Filing No. 197-2 at 5; Filing No. 196-14.

Plaintiff sent a letter to then-Director Frakes "in the fall of 2017." Filing No. 197-12 at 1.  The letter's contents addressed "the individual who killed [his] brother . . .." Filing No. 197-7.  Defendants concede that Williams preemptively assaulted Armendariz.

However, Williams's claims arise out of Defendants' alleged failure to keep Armendariz away from him and the other consequences that flowed from that failure.

Plaintiff contends the following:

39. From 2011 and thereafter, all Defendants were aware that Armendariz was on Williams' central monitoring or "keep separate" list.  They were also aware that Williams and Armendariz should always be housed at separate facilities, and that failure to do so would increase the risk that Armendariz would harm Williams. (Doc # 212-1, p. 1; Doc # 82, p. 5).

40. During the summer of 2017 or before, Defendants transferred Armendariz to TSCI from NSP, despite a long-standing NDCS central monitoring determination to separate Armendariz from Plaintiff by facility. (Doc # 212-1, p. 1; Doc #82, p. 6).

41. Defendants did not inform Williams of this transfer.  Williams eventually learned of it, and when he did, he submitted a grievance of a sensitive nature to Defendant Frakes. (Doc # 212-1, p. 1; Doc # 82, p. 7; Doc # 212-1, p. 4).

42. Defendants did not separate Williams from Armendariz by facility at that point, but they assured him they would maintain "the necessary separation." (Doc # 212-1, p.5).

43. Defendants also told Williams that if he believed there was an "imminent threat to his safety," he should "contact [his unit staff]."  (Doc # 212-1, p. 5). Defendants did not tell Williams that he should submit further or a different form of grievance regarding his concerns.

44. Williams followed directions, and went to his unit housing manager, Defendant Talent [sic], and requested an immediate transfer, which was denied.  (Doc # 212-1, p. 1; Doc # 82, p. 8). Williams repeatedly conveyed his concerns regarding the imminent threat to his safety to Talent [sic], then Bussboom [sic], then Houseman, then Neujahr.  Defendants took no action to separate Williams from Armendariz. (Doc # 212-1, p. 1; Doc # 82, pp. 9–10).

45. Despite Williams' repeated requests for protection, Defendants moved Armendariz to Williams' housing unit.  At that point, Williams knew it was only a matter of time before Armendariz would attack him, and that the likely outcome would be Williams' death.  Since all Defendants had, to that point in time, failed to separate Williams from Armendariz or to otherwise protect Williams from Armendariz, Williams protected himself by preemptively assaulting Armendariz, because he knew that would ensure his transfer to

a different housing unit and immediate separation from Armendariz. Williams was then placed in SMU where Defendants would have no choice but to transfer him. Williams remained on SMU in isolation for about a week. (Doc # 212-1, p. 1; Doc # 82, p. 11).

46. Defendants transferred Williams to NSP. (Doc # 212-1, p. 1; Doc # 82, p. 11).

47. Following the assault, Defendants were aware that Armendariz' security threat group was looking for Williams and seeking to retaliate against him at NSP, because of intelligence that had been collected by Defendants Connelly, Serna, and other NDCS investigative efforts. (Doc # 212-1, p. 1; Doc # 82, pp. 11–12).

48. When Williams was transferred to NSP, Defendants knew from this intelligence that Williams was at risk of harm by inmates at NSP who were associated with Armendariz and/or who were members of Armendariz' security threat group, and Defendants knew that Williams needed to be separated from these NSP inmates. (Doc # 212-1, p. 1; Doc # 82, p. 12).

Filing No. 213 at 6–8.

The Court denies Defendants' motion for partial summary judgment because the Court finds the Plaintiff did in fact exhaust his administrative remedies. Plaintiff filed a precautionary grievance under the procedure outlined in booklet provided by NSP. Filing No. 197-2. Plaintiff additionally spoke to prison staff on numerous occasions about the threats to his safety. Moreover, Plaintiff's mother advocated for Plaintiff's safety. Because Plaintiff has filed a formal grievance at TSCI and addressed his concerns on numerous occasions, the Court concludes that Plaintiff exhausted all remedies available to him. Additionally, Defendants were aware of the threat to Plaintiff's safety, as noted in their records.

Defendants claim that Plaintiff did not exhaust all available remedies because Plaintiff did not file a separate grievance while incarcerated at NSP. Filing No. 198 at 6. Additionally, Defendants state that NSP was not aware of the gang affiliations with

Armendariz that could cause harm to Plaintiff.  However, Plaintiff did file a grievance at TSCI, which operates through the same prison system.  Thus, Plaintiff's records and files from TSCI were transferred to NSP upon his arrival, negating any requirement for Plaintiff to re-file his grievance.  Plaintiff did not have to file the precautionary grievance when transferred to NSP because he was not harmed by Armendariz at that time, and Armendariz was not housed at NSP at that time.

In addition to not filing a formal grievance at NSP, Defendants also contend that Plaintiff did not provide NSP with information about his "known enemies."  For purposes of this motion, it is not necessary for Plaintiff to disclose Armendariz as a "known enemy" at NSP because he did not know Armendariz was going to be housed there.  Moreover, Plaintiff had no reason to know that Armendariz would be housed at NSP, especially after Defendants were aware of the safety issue and promised to house the two inmates separately.

## CONCLUSION

The Court finds that Plaintiff filed a grievance during his time at TSCI.  This grievance resulted in Plaintiff's transfer to NPS.  NPS, no doubt, had access to these records.  Therefore, Defendants' motion for partial summary judgment is denied under Fed. R. Civ. P. 56 and Neb. Civ. R. 56.1.

**THEREFORE, IT IS ORDERED THAT,**

1.  Defendant's motion for partial summary judgment, Filing No. 194, is denied.

Dated this 28th day of April, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

8